480 S.E.2d 702 (1997)
Gordon G. KOLTIS, M.D., Carolina Radiation And Cancer Treatment Center, P.A., and Carolina Radiation Medicine, P.A., Petitioners-Appellees,
v.
NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, Respondent-Appellee, and
Pitt County Memorial Hospital, Inc., Respondent-Intervenor-Appellant.
No. COA96-387.
Court of Appeals of North Carolina.
February 4, 1997.
*703 Poyner & Spruill, L.L.P. by Mary Beth Johnston and Benjamin P. Dean, Raleigh, for respondent-intervenor-appellant.
Petree Stockton, L.L.P. by Noah H. Huffstetler, III and Gary S. Qualls, Raleigh, for petitioners-appellees.
Michael F. Easley, Attorney General by Sherry C. Lindquist, Assistant Attorney General, for the State.
WYNN, Judge.
Petitioners, Dr. Gordon Koltis and two professional associations of which Dr. Koltis is the president and sole shareholder (Carolina Radiation and Cancer Treatment Center, P.A., and Carolina Radiation Medicine, P.A.), proposed to develop and operate a new oncology treatment center in Pitt County, North Carolina. To that end, petitioners notified the North Carolina Department of Human Resources, Division of Facility Services, Certificate of Need Section (DHR) of their ongoing efforts to develop the center and requested DHR's confirmation that the project was exempt from obtaining the certificate of need required for a "new institutional health service" under N.C.Gen.Stat. § 131E-178. DHR responded that no certificate of need was required since the project did not meet the current statutory definition of a "new institutional health service" under N.C.Gen.Stat. § 131E-176(16) but warned that pending legislation would significantly change that definition and if enacted, the project would have to be reevaluated in light of the statutory amendment.
By ratification of Senate Bill 10 on 18 March 1993, N.C.G.S. § 131E-176 was amended so that an oncology treatment center fell within the definition of a "new institutional health service" requiring a certificate of need under N.C.G.S. § 131E-178. However, Senate Bill 10 contained a grandfather clause which excepted from application of the amended statute "any person ... [or] corporation... who has lawfully entered into a binding legal contract to develop and offer any service that was not a new institutional health service requiring a certificate of need prior to the ratification of this act." 1993 N.C. Sess. Laws ch. 7, sec. 12. DHR notified petitioners that they did not fall within the exception and were thus required to obtain a certificate of need. Petitioners challenged DHR's decision via a contested case hearing in the Office of Administrative Hearings. Pitt County Memorial Hospital, Inc. (PCMH) intervened as a proper party and as an "affected person" within the meaning of N.C.Gen.Stat. § 131E-188 (1994).
All parties moved for summary judgment and the Administrative Law Judge (ALJ) entered a recommended decision granting summary judgment in petitioners' favor finding that petitioners fell within the application *704 of the grandfather clause of Senate Bill 10 because they had entered into binding legal contracts to develop the oncology treatment center before 18 March 1993. DHR's Director of the Division of Facility Services issued a final agency decision adopting the ALJ's recommended decision granting summary judgment in petitioners' favor. Respondent-intervenor PCMH appeals.
The principal issue PCMH raises on appeal is whether the agency erred by granting summary judgment to petitioners on the grounds that they were exempt from obtaining a certificate of need because they had entered into binding legal contracts to develop and offer a health service as contemplated by the grandfather clause of Senate Bill 10. We hold that the agency properly granted summary judgment for petitioners and therefore affirm the agency's final decision.
PCMH first contends that the contracts petitioners rely upon are not legally binding contracts. PCMH argues that the terms of petitioners' contracts with Terrence Boardman are not sufficiently definite to be legally binding. In addition, PCMH argues that Mr. Boardman's consulting services could be terminated at will unilaterally by either side and therefore the agreement to provide such services was not binding.
A valid contract requires offer, acceptance, consideration and no defenses to formation. Copy Products, Inc. v. Randolph, 62 N.C.App. 553, 555, 303 S.E.2d 87, 88 (1983).
In the making of a contract it is essential that the parties thereto assent to the same thing in the same sense, and their minds must meet as to all terms. To be binding the terms shall be definite and certain, or capable of being made so. But the contract need not definitely and specifically contain in detail every fact to which the parties are agreeing. It is sufficient if the terms can be made certain by proof.
Sides v. Tidwell, 216 N.C. 480, 483, 5 S.E.2d 316, 318 (1939) (emphasis added) (citations omitted).
The record in the subject case reveals that Mr. Boardman, a certified public accountant, provided general accounting services to CRM for $200 per month. In August 1992, Dr. Koltis and Carolina Radiation Medicine, P.A.(CRM) retained Mr. Boardman to act as their agent and provide consulting services connected with development of the proposed oncology treatment center for an additional $1,400 per month. In December 1992, Dr. Koltis and CRM entered into a second agreement with Mr. Boardman, effective in January 1993, to further provide such services for an additional $600 per month. The record contains two letters from Mr. Boardman to Dr. Koltis which outline the general terms of their agreement. In the first, Mr. Boardman agreed to provide "financial consulting services" including "accounting, payroll and special projects" for $1600 per month from 15 August 1992 through 31 December 1992. In the second, Mr. Boardman agreed to provide "general accounting and consulting services" for $800 per month from 1 January 1993 through 31 December 1993. The record also contains the affidavits of both Mr. Boardman and Dr. Koltis which confirm the general terms and provide further details of the agreement between the parties. We find that the uncontroverted evidence in the record establishes two legally binding contracts for a specific duration between Mr. Boardman and Dr. Koltis.
PCMH next contends that even if the contracts with Mr. Boardman are valid, legally binding contracts, they are not contracts to "develop and offer" the proposed center as required for exemption under the grandfather clause of Senate Bill 10.
Under the grandfather clause of Senate Bill 10, a person or corporation "who has lawfully entered into a binding legal contract to develop and offer any service that was not a new institutional health service requiring a certificate of need prior to the ratification of this act" is exempt from the certificate of need requirement. 1993 N.C. Sess. Laws ch. 7, sec. 12. N.C.G.S. § 131E-176 provides the definition of the terms "develop" and "offer":
(7) To "develop" when used in connection with health services, means to undertake those activities which will result in the offering of institutional health service or *705 the incurring of a financial obligation in relation to the offering of such a service.
....
(18) To "offer," when used in connection with health services, means that the person holds himself out as capable of providing, or as having the means for the provision of, specified health services.
PCMH argues that petitioners had neither entered into any contract to "develop" nor entered into any contract to "offer" the proposed oncology treatment center. However, the record reveals that petitioners entered into two separate contracts with Mr. Boardman to provide consulting services related to development of the proposed oncology treatment center.
Mr. Boardman's performance under the contracts included preparation of an initial budget proposal and financial feasibility study for the center, request and receipt of proposals from various vendors for equipment needed in the center, contact with an architect to provide a cost projection for the proposed center, the investigation of possible sites upon which to build the center, and correspondence with DHR regarding the necessity of obtaining a certificate of need for the project. Petitioners' contracts with Mr. Boardman were clearly to "develop" the center.
PCMH further argues that to be exempt from the certificate of need requirement, the grandfather clause in Senate Bill 10 requires a contract to develop and offer a health service. PCMH maintains that petitioners have failed to present evidence of any contract to develop and offer any health service.
The agency, adopting the ALJ's recommended decision, concluded that "[p]etitioners' contracts `to develop' are sufficient to satisfy the Grandfather Clause. Under the Department's own interpretation, no separate `contract to offer' is necessary." In arriving at that conclusion, the agency relied upon Hunter v. N.C. Dept. of Human Resources, 93 DHR 0746 (Final Decision, July 14, 1994).
In Hunter, the agency considered whether a contract for the purchase of heart-lung bypass equipment entered into prior to the ratification of Senate Bill 10 qualified petitioners for an exemption from the application of the amended statute under the grandfather clause. The agency concluded:
The definition of "offer" makes it impossible to have a "contract" to offer. "Offer" as it is used in the New Act involves only one party because, quite simply, one cannot contract to "hold oneself out" as being capable of providing or having the means of providing a health service; therefore, a contract for the offering or use of the equipment prior to March 18, 1993, was not necessary.
While we recognize that the agency's interpretation of the grandfather clause of Senate Bill 10 is not binding on this Court, "the construction adopted by those who execute and administer the law in question is relevant and may be considered. Such construction is entitled to `great consideration,' or to `due consideration.' It is said to be `strongly persuasive,' or even `prima facie correct.'" MacPherson v. City of Asheville, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973) (citations omitted). We find the agency's interpretation persuasive and therefore hold that to satisfy the requirements of the grandfather clause of Senate Bill 10 one need only show a binding legal contract to develop any service that was not a new institutional health service requiring a certificate of need prior to 18 March 1993.
We find that petitioners fall within the exemption provided by the grandfather clause of Senate Bill 10 because they entered into contracts with Mr. Boardman to provide services to develop the proposed oncology treatment center prior to 18 March 1993. Accordingly, we hold that the agency properly granted summary judgment for petitioners and affirm the agency's final decision.
Affirmed.
ARNOLD, C.J., and SMITH, J., concur.