**Thomas A. COLLIE, Plaintiff,**

v.

**WEHR DISSOLUTION CORP., formerly National Hearing Centers Inc.; James R. Wehr, individually; and John H. Bachman, individually, Defendants.**

**No. CIV.1:04 CV 00248.**

United States District Court, M.D. North Carolina.

Nov. 16, 2004.

North Carolina Uniform Fraudulent Transfer Act, N.C. Gen.Stat. § 39–23.1, *et seq.*

Randolph M. James, Randolph M. James, P.C., Winston–Salem, NC, for Plaintiff.

Robin E. Shea, Kenneth Paul Carlson, Jr., Jonathan Woodward Yarbrough, Constangy Brooks & Smith, LLC, Winston–Salem, NC, for Defendants.

John H. Bachman, Oklahoma City, OK, pro se.

### MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff brought this action in the General Court of Justice, Superior Court Division for Forsyth County claiming wrongful termination in violation of North Carolina public policy, breach of contract, fraud, negligent misrepresentation, and negligent infliction of severe emotional distress. Defendants timely removed the action on the basis of diversity of citizenship. Before the court is Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the court will grant Defendants' motion to dismiss pursuant to Rule 12(b)(1).

1. National Hearing Centers, Inc., became

## DISCUSSION

### I. *The Jurisdictional Prerequisite*

The issue before the court is whether the Arbitration Agreement ("the Agreement") signed by Thomas A. Collie ("Plaintiff") serves to bar Plaintiff's present action because the court lacks subject matter jurisdiction. Both prior to and after signing the Agreement, Plaintiff worked as an at-will employee of National Hearing Centers, Inc. ("Corporate Defendant")[1], the party that proffered the Agreement to Plaintiff. In pertinent part, the Agreement states that:

> [The employee] agrees to submit any ... dispute arising out of [the employee's] employment or the termination of [the employee's] employment (including, but not limited to, claims of unlawful termination based on ... breach of contract or any other bias prohibited by law) exclusively to arbitration under the [F]ederal Arbitration Act, 9 U.S.C., Section 1 .... This arbitration shall be the exclusive means of resolving any dispute arising out of [the employee's] employment or termination from employment by [the employer or the employee], and no further action can be brought by employees in any court or any forum.

(Defs.' Joint Mot. Dismiss, Ex. A.) The Agreement provides that any dispute must be submitted to arbitration "within one (1) year from the date of termination, or one (1) year from the date on which the alleged incident(s) occurred." *Id.* Thus, if the Agreement is applicable to this matter, all claims raised in Plaintiff's complaint are time-barred due to Plaintiff's failure to submit the dispute to arbitration within the one-year restriction consented to in the Agreement.

Wehr Dissolution Corp.

■ To determine the applicability of the Agreement, "the court must first find that an arbitration agreement exists between the parties." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir.2001). "If an agreement is found to exist, the court must then decide whether the dispute at issue falls within the scope of the agreement." *Id.* State law applies "[t]o determine whether the parties agreed to arbitrate." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

## II. *The Validity of the Arbitration Agreement*

■ North Carolina " 'has a strong public policy favoring the settlement of disputes by arbitration.' ... [W]here there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 133 N.C.App. 116, 120, 514 S.E.2d 306, 309 (1999) (citing *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91–92, 414 S.E.2d 30, 32 (1992)). While North Carolina law favors arbitration, "the underlying agreement must first be shown to be valid as determined by a common law contract analysis." *Howard v. Oakwood Homes Corp.*, 134 N.C.App. 116, 118, 516 S.E.2d 879, 881 (1999); *Robbins–Hutchens v. Liberty Hardware Mfg. Corp.*, No. Civ. 101CV00046, 2001 WL 823495 at *3 (M.D.N.C.2001). A valid contract "requires offer, acceptance, consideration and no defenses to formation." *Koltis v. North Carolina Dep't Human Res.*, 125 N.C.App. 268, 271, 480 S.E.2d 702, 704 (1997). It is essential to the formation of any contract that there be " 'mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.' " *Creech v. Milnick*, 347 N.C. 520, 527, 495 S.E.2d 907, 911–12 (1998) (quoting *Snyder*

*v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980)).

Plaintiff claims that he is not bound by the contents of the Agreement because the Agreement did not satisfy three fundamentals of contract formation and is void *ab initio*. Alternatively, Plaintiff claims that because the two individual defendants were not parties to the Agreement, the court has jurisdiction to hear Plaintiff's claims regarding the two individual defendants.

■ First, Plaintiff alleges that the Agreement lacked mutual assent. To support his arguments, Plaintiff cites that only he signed the Agreement, that National Hearing Centers, Inc., promised nothing in exchange for Plaintiff's promise to arbitrate, and that there was no course of performance between the parties to imply National Hearing Centers, Inc.'s willingness to arbitrate.

■ Mutual assent is typically "established by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract." *Id.* Here, National Hearing Centers, Inc., offered Plaintiff the Agreement as a condition of Plaintiff's continued employment at-will. (Def.'s Joint Mot. Dismiss, Ex. A ("By simply accepting or continuing employment with National Hearing Centers, Inc., [Plaintiff] automatically agree[s] that arbitration is the exclusive remedy for all disputes arising out of or related to your employment").) The lack of a signature by any representative of National Hearing Centers, Inc., does not undermine the Agreement's enforceability in the present action. *See Howard v. Oakwood Homes Corp.*, 134 N.C.App. 116, 120, 516 S.E.2d 879, 882 (1999) ("[B]y proffering the [contract regarding the Dispute Resolution Program], defendant has at least implicitly agreed to be mutually bound by the [agreement] .... Moreover,

the [agreement] provides that all arbitrations are to be conducted pursuant to the FAA. The FAA requires that agreements to arbitrate be in writing, however, *such agreements need not be signed.*"); *see also Real Color Displays, Inc. v. Universal Applied Techs. Corp.*, 950 F.Supp. 714, 717–18 (E.D.N.C.1997) (finding that the FAA imposes no requirement that a written arbitration agreement be signed by the party to be charged). Plaintiff accepted the offer both by signing the Agreement and by continuing as an at-will employee of National Hearing Centers, Inc. *See generally Martin*, 133 N.C.App. at 121, 514 S.E.2d at 309 (plaintiff's signature was "a 'clear and unambiguous' certification of her willingness to submit disputes arising from her employment with Duke to the grievance procedure."); *Real Color Displays*, 950 F.Supp. at 717–18 (finding that a party may evidence an intent to be bound by the party's actions or conduct). Finally, there is no requirement of a course of performance to evidence mutual assent. Accordingly, Plaintiff's theory that there was a lack of mutual assent fails.

■ Plaintiff's second attack on the validity of the Agreement is that the Agreement lacked consideration. Plaintiff alleges that National Hearing Centers, Inc., failed to assent to be bound and failed to make any promises, thus National Hearing Centers, Inc., failed to offer any consideration.

An exchange of " '[m]utual binding promises provide[s] adequate consideration to support a contract.' " *Martin*, 133 N.C.App. at 122, 514 S.E.2d at 310 (citing *Cas. Co. v. Funderburg*, 264 N.C. 131, 140 S.E.2d 750 (1965), and *Kirby v. Bd. of Educ.*, 230 N.C. 619, 55 S.E.2d 322 (1949)). In particular, "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." *Id.* (citing *Johnson v.*

*Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998)).

Here, Plaintiff and National Hearing Centers, Inc., both exchanged promises in executing the Agreement. (Defs.' Joint Mot. Dismiss, Ex. A.) The express language of the Agreement states that arbitration is "the *exclusive means* of resolving any dispute arising out of your [the employee's] employment or termination from employment by *National Hearing Centers, Inc. or you.*" (*Id.* (emphasis added).) Further, National Hearing Centers, Inc., continued its at-will employment of Plaintiff, and Plaintiff continued working for National Hearing Centers, Inc. *See Howard*, 134 N.C.App. at 121–22, 516 S.E.2d at 883 (stating that continued employment alone may suffice as sufficient consideration in the context of agreements to arbitrate, which are favored as a matter of public policy). Accordingly, both parties consented to submitting disputes arising out of Plaintiff's employment to arbitration, and the Agreement does not fail for lack of consideration.

■ Plaintiff's third argument supporting his claim that the Agreement is void *ab initio* is that the defense of mutual mistake applies to undermine the contract's formation. Plaintiff argues that both Plaintiff and National Hearing Centers, Inc., were mistaken about the applicability of the Federal Arbitration Act (FAA) to their employment relationship when entering into the Agreement. The Agreement provided that "any ... disputes arising out of [Plaintiff's] employment or the termination of [Plaintiff's] employment ... [will be submitted] exclusively to binding arbitration under the [F]ederal Arbitration Act, 9 U.S.C., Section 1." (Defs.' Joint Mot. Dismiss, Ex. A.) Plaintiff argues that the FAA cannot apply to at-will employment contracts. (Pl.'s Resp. & Mem. Opp. Defs.' Mot. Dismiss at 6 ("[T]here is no evidence

that the employment contract involved a 'transaction' as contemplated by the FAA.").) Plaintiff also argues that the FAA does not apply because the contract does not "evidenc[e] a transaction involved in commerce." (*Id.* at 7 (stating that the FAA "simply does not apply in the case of a plaintiff, who managed a small hearing aid store in the Walmart in Kernersville, North Carolina for the corporate defendant").)

■ The FAA states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Despite this limitation, the FAA applies to most employment contracts, including at-will employment contracts. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (finding that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *Id.* at 289, 122 S.Ct. 754); *see also Circuit City Stores. Inc. v. Adams,* 532 U.S. 105, 113–15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (rejecting the lower court's determination that the FAA excludes all employment contracts and confining the FAA exemption to employment contracts relating to transportation workers). Accordingly, the parties were not mistaken in believing that the FAA applied to Plaintiff's employment with National Hearing Centers, Inc.

The FAA also provides that:

A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In *Circuit City Stores, Inc. v. Adams,* the Supreme Court found that the FAA's "[t]ransaction involving commerce" language does not confine the FAA's applicability to commercial contracts. 532 U.S. at 113, 121 S.Ct. 1302. The Supreme Court reads the language of Section 2 to "signal[ ] an intent to exercise Congress' commerce power to the full." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "Because the [FAA] provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce,' " *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (internal quotation marks, citations, and emphasis omitted). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect on interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice … subject to federal control.' Only that general practice need bear on interstate commerce in any substantial way." *Id.* at 56–57, 123 S.Ct. 2037.

Plaintiff concedes that National Hearing Centers, Inc., was engaged in interstate commerce.[2] (Pl.'s Resp. & Mem. Opp.

---

2. The underlying employment contracts in *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), and *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), involved analogous employment relationships with national corporations engaged in interstate commerce.

Defs.' Mot. Dismiss at 6 n. 10.) Plaintiff argues that his employment did not involve commerce, however, because his employment contract allegedly did not "actually involv[e] interstate commerce, e.g.—securities dealers trading across state lines or a traveling dance troupe."[3] (Pl.'s Resp. & Mem. Opp. Def.'s Mot. Dismiss at 7.) Plaintiff cites *McDonough Constr. Co. of Florida v. Hanner*, 232 F.Supp. 887 (M.D.N.C.1964), as support for his position that the Agreement did not involve interstate commerce and is not subject to the FAA. Plaintiff's reliance on *McDonough Construction* is misguided, however, as *McDonough Construction* was decided before the Supreme Court held that the FAA applied in the context of employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. at 128, 121 S.Ct. 1302 (Stevens, J. dissenting) ("[T]he majority's reasoning is squarely contradicted by the Court's approach in [the case relied upon by the district court in *McDonough, Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 200, 201, n. 3, 76 S.Ct. 273, 100 L.Ed. 199 (1956),] where the [Supreme] Court concluded that an employment contract did not 'evidence "a transaction involving commerce" within the meaning of § 2 of the Act,' and therefore did not 'reach the further question whether in any event petitioner would be included in "any other class of workers" within the exceptions of § 1 of the Act.' "). Plaintiff's argument fails because his employment contract involved interstate commerce. Therefore, the Agreement was a valid contract between National Hearing Centers, Inc., and Plaintiff and is not rendered void *ab initio*.

Finally, Plaintiff contends *arguendo* that the two individual non-signatory defendants, James R. Wehr (majority owner of the Corporate Defendant) and John H. Bachman (general manager for the Corporate Defendant), were not intended beneficiaries of the Agreement, and thus Plaintiff may pursue his claim against them regardless of his Agreement with the Corporate Defendant. Due to the individual defendants' roles with the Corporate Defendant, however, Plaintiff's argument is unpersuasive.

■ Generally, one who is not a party to an arbitration agreement lacks standing to compel arbitration. *See, e.g., Trompeter v. Boise Cascade Corp.*, 877 F.2d 686, 687 (8th Cir.1989); *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under theories " 'aris[ing] out of common law principles of contract and agency law.' " *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir.2000) (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)) (stating that "the Second Circuit recently noted that it had recognized that five theories could provide a basis 'for binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel' "); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir.2001) (stating that "[a] non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract"); *see also Barrowc-*

---

3. Plaintiff's argument is further undermined by the various interstate activities in which he participated while employed by National Hearing Centers, Inc. He began working for National Hearing Centers, Inc., in Gaffney, South Carolina, before being asked to relo- cate to Kernersville, North Carolina. (Pl.'s Compl. at ¶ 10.) Plaintiff corresponded with National Hearing Centers, Inc.'s office in Missouri. Further, Plaintiff attended a managerial meeting in Knoxville, Tennessee on Saturday, November 22, 2002. (*Id.* at ¶ 24.)

*lough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938 (3d Cir.1985) (finding that an arbitration agreement between an employee and an employer can be enforced against non-signatory sub-entities and representatives of the employer); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir.1988) (finding that when allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement"); *Arnold v. Arnold Corporation-Printed Communications for Bus.*, 920 F.2d 1269, 1281 (6th Cir.1990) (finding that non-signatory corporate officers sued in their individual capacity could, under agency principles, invoke the arbitration agreement between the plaintiff and the corporate defendant for conduct that occurred in their official capacities). Under the theory of agency, an agent can assume the protection of the contract which the principal has signed. *Davidson v. Becker*, 256 F.Supp.2d 377, 383–84 (D.Md.2003). Courts have applied this principle to allow for non-signatory agents to avail themselves of the protection of their principal's arbitration agreement. *See, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.1993) ("Courts in this and other circuits have consistently held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.").

■ While the individual defendants did not sign the Agreement between Plaintiff and National Hearing Centers, Inc., their status as agents of the Corporate Defendant enables them to use the Agreement to compel arbitration. "Such a finding also has the result of preventing an unwanted result: the circumvention of valid arbitration agreements by plaintiffs. If plaintiffs could sue individual defendants, they could too easily avoid the arbitration agreements that they signed with corporate entities." *Davidson*, 256 F.Supp.2d at 384 (citing *Roby*, 996 F.2d at 1360). The conduct complained of by Plaintiff occurred in the individual defendants' official capacities with the Corporate Defendant. By allowing the individual defendants the protection of National Hearing Center, Inc.'s Agreement, the court prevents Plaintiff from circumventing arbitration by suing an individual defendant.

### III. The Scope of the Arbitration Agreement

The scope of the Agreement also affects the court's jurisdiction over Plaintiff's claims. If Plaintiff asserts a claim outside of the scope of the Agreement, then Plaintiff is not obligated to arbitrate that claim and this court may have subject-matter jurisdiction.

The duty to arbitrate is contractual, and thus "only those disputes which the parties have agreed to submit to arbitration may be so resolved." *Rodgers Bldrs., Inc. v. McQueen*, 76 N.C.App. 16, 23, 331 S.E.2d 726, 731 (1985) (citing *Charlotte City Coach Lines, Inc. v. Bhd. of R.R. Trainmen*, 254 N.C. 60, 67–68, 118 S.E.2d 37, 43 (1961)), *review denied, Rodgers Bldrs. v. McQueen*, 315 N.C. 590, 341 S.E.2d 29 (1986). Courts look to the language of an agreement "[t]o determine whether the parties agreed to submit a particular dispute or claim to arbitration ... and ascertain[s] whether the claims fall within its scope." *Id.* Courts resolve any doubts regarding the scope of an agreement in favor of arbitration. *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984). Courts look "not [to] the charac-

terization of the claim as tort or contract, but [to] the relationship of the claim to the subject matter of the arbitration clause." *Rodgers Bldrs., Inc.*, 76 N.C.App. at 24, 331 S.E.2d at 731.

 The Agreement entered into by Plaintiff is sufficiently broad to cover the claims asserted by Plaintiff. *See id.* (discussing other courts' application of analogously broad arbitration agreements to various tort and contract claims). There is a strong relationship between Plaintiff's claims regarding the events leading up to and resulting in Plaintiff's termination and the subject matter of the Agreement. Accordingly, Plaintiff's claims fall within the scope of the Agreement and are included within the category of claims which the parties agreed to arbitrate. Because it appears that Plaintiff's failure to submit his claims to arbitration within one year bars the arbitration remedy which would otherwise be available to him, the court will dismiss this action rather than issue a stay.

## CONCLUSION

For the reasons set forth above, the court will grant Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion [Doc. # 2] to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1), Federal

Rules of Civil Procedure, is **GRANTED**, and this action is **DISMISSED**.