JAMES S. BROWN, JR. & JACKY A. ROSATI, PLAINTIFFS v. CENTEX HOMES; MARY KATHRYN KROENING; DODD & ASSOCIATES, INC.; AND JERRY OWENS, DEFENDANTS

No. COA04-1180

(Filed 19 July 2005)

**1. Appeal and Error— appealability—denial of arbitration—substantial right**

   An interlocutory order denying arbitration affects a substantial right and is immediately appealable.

**2. Arbitration and Mediation— sales agreement with home builder—arbitration available to agent as well as builder**

An arbitration clause in a sales agreement with a home builder (Centex) extended to a sales representative (Kroening) who was an employee of the builder and acted as an agent for the builder, but did not sign the sales agreement.

Appeal by defendants Centex Homes and Mary Kathryn Kroening from order entered 11 May 2004 by Judge Wade Barber in Orange County Superior Court. Heard in the Court of Appeals 21 April 2005.

*Law Office of Robert B. Jervis, P.C., by Robert B. Jervis, for plaintiffs-appellees.*

*John T. Benjamin, Jr., and William E. Hubbard, for defendant-appellant Centex Homes.*

*Manning Fulton & Skinner, P.A., by William C. Smith, Jr., for defendant-appellant Mary Kathryn Kroening.*

*No brief filed for defendant-appellees Dodd & Associates, Inc. and Jerry Owens.*

TYSON, Judge.

Centex Homes ("Centex") and Mary Kathryn Kroening ("Kroening") (collectively, "defendants") appeal order entered 11 May 2004 granting Centex's motion to stay and compel arbitration and denying Kroening's motion to stay and compel arbitration. We reverse and remand.

I. Background

On 21 January 2002, James S. Brown, Jr., and Jacky A. Rosati ("plaintiffs") met with Kroening at a sales office owned by Centex located in the Becket's Ridge Subdivision in Hillsborough, North Carolina. Plaintiffs looked at a home located adjacent to a wooded piece of property. Plaintiffs asked Kroening about future plans for the adjacent land. She replied that there were no current plans, but if the property were developed, the construction would be residential. Plaintiffs executed a contract to purchase the home (the "Contract") and paid Centex a deposit. At this time, the Town of Hillsborough had approved construction of a shopping center anchored by a Wal-Mart store on the adjacent wooded tract.

On 22 October 2003, plaintiffs filed a complaint against defendants alleging fraud and unfair and deceptive trade practices and

requesting punitive damages. Defendants filed: (1) a motion to stay and compel arbitration; (2) a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b); and (3) an answer and affirmative defenses. Defendants' motion to stay and compel arbitration was heard in Orange County Superior Court on 3 May 2004. The trial court considered the pleadings, motions, and affidavits submitted by the parties and heard arguments by counsel. On 11 May 2004, the trial court entered an order granting Centex's motion to stay and compel arbitration and denying Kroening's motion to stay and compel arbitration. Defendants Centex and Kroening appeal.

## II. Issue

The issue on appeal is whether the arbitration clause included in the Contract between plaintiffs and Centex extends to Kroening.

## III. Interlocutory Appeal

[1] This Court has repeatedly held that "an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (citations omitted). Pursuant to Rule 28(b)(4) of the North Carolina Rules of Appellate Procedure, defendants properly recognized the interlocutory nature of their appeal and argued the grounds for immediate appellate review. N.C.R. App. P. 28(b)(4) (2004); *see* also *Chicora Country Club, Inc., et al. v. Town of Erwin*, 128 N.C. App. 101, 105, 493 S.E.2d 797, 800 (1997).

## IV. Standard of Review

[2] This Court recently outlined the appropriate standard of review for considering the applicability of an arbitration provision:

> "The question of whether a dispute is subject to arbitration is an issue for judicial determination. This determination involves a two-step analysis requiring the trial court to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement.

> A dispute can only be settled by arbitration if a valid arbitration agreement exists. The party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings

to the contrary. However, the trial court's determination of whether a dispute is subject to arbitration is a conclusion of law that is reviewable *de novo* on appeal."

*Revels v. Miss Am. Org.*, 165 N.C. App. 181, 188-89, 599 S.E.2d 54, 59 (quoting *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004)) (internal citations and quotations omitted), *disc. rev. denied*, 359 N.C. 191, 605 S.E.2d 153 (2004).

## V. Arbitration

Defendants argue the scope of the arbitration agreement included in the Contract between Centex and plaintiffs also extends to Kroening and her relationship with plaintiffs. We agree.

### A. Valid Agreement

North Carolina recognizes a strong public policy in favor of arbitration. *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). However, before a dispute can be ordered resolved through arbitration, there must be a valid agreement to arbitrate. *LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 547, 548 S.E.2d 574, 577-78 (2001) (citations omitted). The law of contracts governs the issue of whether an agreement to arbitrate exists. *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992) (citing *Southern Spindle and Flyer Co., Inc. v. Milliken & Co.*, 53 N.C. App. 785, 281 S.E.2d 734 (1981), *disc. rev. denied*, 304 N.C. 729, 288 S.E.2d 381 (1982)).

Both our research and that of the parties fail to disclose precedent established by our State appellate courts addressing the issue at bar. We turn our attention to federal decisions and opinions drafted by other jurisdictions. Although we are not bound by federal case law, we may find their analysis and holdings persuasive. *Huggard v. Wake County Hospital System*, 102 N.C. App. 772, 775, 403 S.E.2d 568, 570 (1991) ("As an interpretation of state law by a federal court, this holding is not binding on us; however, we find its analysis persuasive."), *aff'd*, 330 N.C. 610, 411 S.E.2d 610 (1992); *Trust Co. v. R.R.*, 209 N.C. 304, 308, 183 S.E. 620, 622 (1936) ("It may not be amiss to say that the decisions of other jurisdictions are persuasive, but not binding on us."); *Giles v. First Virginia Credit Servs., Inc.*, 149 N.C. App. 89, 99, 560 S.E.2d 557, 564 (2002) ("While cases from other jurisdictions are not binding on our courts, they provide insight . . . and therefore are instructive."), *disc. rev. denied and appeal dismissed*, 355 N.C. 491, 563 S.E.2d 568 (2002).

In *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, the Third Circuit Court of Appeals considered application of an arbitration clause between the employee of a corporation and a suing client. 7 F.3d 1110 (3rd Cir. 1993). The client alleged mishandling of its accounts by the corporation and its employee. *Id.* at 1113. Prior to opening the investment account, the client had signed an agreement with the corporation which included an arbitration clause. *Id.* at 1112. One of the central issues was whether the arbitration agreement extended to the corporation's employee. *Id.* at 1121. The court held, "[u]nder traditional agency theory, [the employee] is subject to contractual provisions to which [the employer] is bound . . . . Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Id.* (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990); *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). The Third Circuit noted, "[a]n entity . . . can only act through its employees . . . ." *Id.* at 1122 (citing *Trott v. Paciolla*, 748 F. Supp. 305, 309 (E.D. Pa. 1990)).

The United States District Court for the Middle District of North Carolina addressed this issue in *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555 (M.D.N.C. 2004). The plaintiff filed a complaint against the defendants, a corporation, its majority shareholder, and general manager, for causes of action arising from his termination of employment. *Id.* at 557. The latter two defendants were individuals. *Id.* at 561. A dispositive issue was whether an arbitration clause in an employment contract signed by the plaintiff and the defendant corporation precluded subject matter jurisdiction for the two individual defendants who did not sign the contract. *Id.*

Generally, one who is not a party to an arbitration agreement lacks standing to compel arbitration. Non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under theories arising out of common law principles of contract and agency law. Under the theory of agency, an agent can assume the protection of the contract which the principal has signed. Courts have applied this principle to allow for non-signatory agents to avail themselves of the protection of their principal's arbitration agreement.

*Id.* at 561-62 (internal citations and quotations omitted). The court held that although the two individual defendants did not sign the employment contract containing the arbitration clause, "their status

as agents of the Corporate Defendant enables them to use the [arbitration clause] to compel arbitration." *Id.* at 562.

Here, there is no dispute an agreement to arbitrate exists between plaintiffs and Centex. Plaintiffs did not appeal the trial court's order staying their claims against Centex and compelling them to submit their disputes against Centex to binding arbitration. Rather, the issue concerns whether that arbitration agreement extends to Centex's agent, Kroening.

Kroening did not sign the Contract which included the arbitration clause. However, her status as an agent of Centex affords her the right of arbitration. *Id.* The basis for plaintiffs' claims derive from Kroening's representation as an agent for Centex. Plaintiffs' complaint alleges: "At all times relevant to the issues involved in this action, Defendant Kroening was an employee, agent and representative of Defendant Centex and all of Defendant Kroening's acts and omissions complained of herein were committed by her in the course and scope of her employment with Defendant Centex." Plaintiffs' claims against Centex are based exclusively upon the conduct of its employee, Kroening, under vicarious liability. In order to reach Centex, plaintiffs must show Kroening was acting as its agent in furtherance of its business goals during the times at issue. As the Third Circuit noted in *Pritzker*, "An entity . . . can only act through its employees . . . ." 7 F.3d at 1122 (citing *Trott*, 748 F. Supp. at 309). Plaintiffs cannot circumvent the arbitration agreement with Centex by seeking damages from Centex's individual employee. We hold the arbitration clause in the Contract between plaintiffs and Centex extends to Kroening.

### B.  Dispute at Issue

Arbitration is contractually agreed to and " 'only those disputes which the parties have agreed to submit to arbitration may be so resolved.' " *Collie*, 345 F. Supp. 2d at 562 (quoting *Rodgers Bldrs., Inc. v. McQueen*, 76 N.C. App. 16, 23, 331 S.E.2d 726, 731 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E.2d 29 (1986)). "Courts look to the language of an agreement to determine whether the parties agreed to submit a particular dispute or claim to arbitration . . . and ascertain[s] whether the claims fall within its scope[.]" *Id.* (internal quotations omitted).

The Contract included the following language concerning the arbitration clause:

Arbitration of disputes following closing: Seller prides itself on having many satisfied customers. In the unlikely event that a dispute relating to the marketing, sale, design, construction or conveyance of the residence arises between them after closing of the residence purchase, including a claim for personal injury or *misrepresentation,* Purchaser and Seller agree to resolve the dispute exclusively through binding arbitration. The arbitration will be conducted by the American Arbitration Association, in accordance with its Commercial Arbitration Rules . . . .

(Emphasis supplied).

The basis for plaintiffs' claims is Kroening's alleged misrepresentation concerning the future development and use of adjoining property. Under the terms of the arbitration clause, this dispute clearly falls within the scope of the agreement and is subject to arbitration. *See Revels*, 165 N.C. App. at 188-89, 599 S.E.2d at 59.

## VI. Conclusion

This interlocutory appeal is properly before us due to defendants' assertion of the substantial right at issue. The arbitration agreement entered into by plaintiffs and Centex extended to Centex's agent, Kroening. This dispute is covered by the arbitration clause. The trial court's order is reversed and this matter is remanded.

Reversed and Remanded.

Chief Judge MARTIN and Judge LEVINSON concur.