PAMELA A. MARTIN, Plaintiff v. JEFFREY M. VANCE, RONALD BEAUVAIS, and DUKE UNIVERSITY, Defendants

No. COA98-649

(Filed 4 May 1999)

**1. Appeal and Error— appealability—order denying arbitration**

An order denying arbitration is immediately appealable because it involves a substantial right (the right to arbitrate claims) which might be lost if the appeal is delayed.

**2. Arbitration— agreement to arbitrate—employment contract**

A trial court order denying defendant's' motions to dismiss and to stay proceedings pending final arbitration was reversed

and remanded where plaintiff's employment contract included an agreement to arbitrate the claims plaintiff asserts. The grievance procedure as set out in the Personnel Policy Manual became a part of plaintiff's employment contract because it had been included in the Manual and it is apparent that plaintiff signed a transfer/upgrade request knowing that any claim arising out of her employment would be subject to resolution pursuant to the grievance procedure. Moreover, she took advantage of the grievance procedure by initiating internal review of her termination and seeking reinstatement.

Appeal by defendants from an order entered 31 March 1998 by Judge David Q. LaBarre and filed 14 April 1998 in Orange County Superior Court. Heard in the Court of Appeals 27 January 1999.

*Baddour & Milner, PLLC, by Robert Terrell Milner, for plaintiff-appellee.*

*Fulbright & Jaworski, L.L.P., by John M. Simpson and Karen M. Moran, for defendants-appellants.*

WALKER, Judge.

On 30 December 1997, plaintiff filed this action against her former employer, Duke University (Duke), and her former supervisors Jeffrey Vance (Vance) and Ronald Beauvais (Beauvais) alleging battery, intentional infliction of emotional distress, tortious interference with contract, and negligent retention. Plaintiff had been employed at Duke since 1990 as a nonexempt biweekly employee who was not covered by a collective bargaining agreement. This meant she was paid every two weeks and was subject to federal overtime restrictions. She was not employed for a fixed period of time and did not have a written employment contract. Since 5 February 1996, plaintiff had worked as Staff Assistant to Vance, an Associate Professor in Neurology at Duke University Medical Center. Beauvais was the Administrator of the Department of Neurology. Vance and Beauvais accused plaintiff of falsifying her time cards which led to her termination by Duke on 28 February 1997. As plaintiff gathered her belongings to leave, she alleges that Vance committed a battery upon her by standing in close proximity to her and then shoving her away from her computer. Plaintiff also alleges that during her employment with Vance she was subjected to a pattern of verbal abuse, insults, and humiliation that led to her diagnosis of clinical depression. Further,

she alleges that Vance and Beauvais interfered with her "employment contract . . . with Duke" by representing to her that Duke did not pay overtime but approved her use of "comp time" to make up for the extra hours that she had worked.

On 29 January 1997, prior to her termination, plaintiff requested a transfer to another department at Duke. The transfer/upgrade request form that plaintiff filed contained a certification which she signed. That certification read in part:

> 6. I hereby agree that any dispute or controversy arising out of or related to my employment or termination by Duke University shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure, as may be periodically amended and which is available upon request from the department of Human Resources.

The grievance procedure referred to in the certification was entitled the "Nonexempt (Biweekly) Employee Grievance Procedure" and was contained in the Duke University Personnel Policy Manual. The grievance procedure had been in place at Duke since 1994, and it called for an outside arbitrator to hear all grievances involving the involuntary termination of an employee such as plaintiff. Prior to the filing of her complaint, plaintiff availed herself of the grievance procedure and sought reinstatement through the internal portion of the process, proceeding to the "Second Step."

In response to plaintiff's complaint, defendants filed a motion to dismiss and a motion to stay these proceedings pending completion of arbitration. After a hearing on motions, the trial court made the following findings and conclusions:

## FINDINGS OF FACT

1. Plaintiff was employed by Defendant Duke University during all times relevant to this action.

2. At no time did Plaintiff sign a written contract of employment with Duke University.

3. Plaintiff signed the document entitled Duke University Transfer/Upgrade Request which contained a clause referring to binding arbitration. Plaintiff never received the transfer she requested.

4. Duke University's Personnel Policy Manual is a unilaterally promulgated employment policy manual which outlines grievance procedures purporting to provide for the arbitration of certain disputes between Duke University and its employees.

## CONCLUSIONS OF LAW

1. This Court has personal jurisdiction over the parties to this action, and subject matter jurisdiction over the claims asserted in this action.

2. Plaintiff was employed by Defendant Duke University as an employee-at-will during all times relevant to this action.

3. Pursuant to Walker v. Westinghouse Electric Corp., 77 N.C. App. 253, 335 S.E.2d 79 (1985), Duke University's unilaterally promulgated Personnel Policy Manual, submitted by Defendants as evidence of a contract between Duke University and Plaintiff to submit disputes such as those at issue in this action to binding arbitration, is not a part of Plaintiff's employment contract and is therefore not a contract as a matter of law.

4. The document entitled "Duke University Transfer/Upgrade Request" is not a contractual agreement in any sense, is not a part of Plaintiff's employment contract and is therefore not a contract as a matter of law.

The trial court denied defendants' motions to dismiss and to stay proceedings pending arbitration.

[1] Ordinarily, this appeal would be interlocutory because it does not determine all of the issues between the parties and directs some further proceeding preliminary to a final judgment. *Futrelle v. Duke University*, 127 N.C. App. 244, 247, 488 S.E.2d 635, 638, *disc. review denied*, 347 N.C. 398, 494 S.E.2d 412 (1997). However, an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed. *Burke v. Wilkins*, 131 N.C. App. 687, 688, 507 S.E.2d 913, 914 (1998).

[2] On appeal, defendants contend that the grievance procedure was a part of plaintiff's employment contract and that this was evidenced by her signing of the transfer/upgrade request. Plaintiff argues that

the grievance procedure and policy manual were not part of her employment contract and that the transfer/upgrade request did not constitute a supplement to her employment contract because there was no mutuality of assent to the agreement and there was no voluntary waiver of plaintiff's rights to judicial process.

At the outset, we note that "North Carolina has a strong public policy favoring the settlement of disputes by arbitration." *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Our review confirms this position is consistent with other jurisdictions including "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 114 L. Ed. 2d 26 (1991). Our Supreme Court has held that where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration. *R.N. Rouse & Co.*, 331 N.C. at 92, 414 S.E.2d at 32. The validity of an arbitration agreement is determined by the application of basic contract law principles. *Futrelle*, 127 N.C. App. 244, 488 S.E.2d 635; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 134 L. Ed. 2d 902 (1996).

The dispositive issue here is whether the plaintiff, in her contract of employment with Duke, agreed to arbitration of her claims in accordance with the procedure set forth in the Personnel Policy Manual.

The trial court in its denial of defendants' motion, cited *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986) where the plaintiff employee alleged he was wrongfully discharged by his employer and claimed that an employee handbook was part of his employment contract which the employer had violated. Under the facts of that case, this Court held that the handbook was not part of the plaintiff's at-will employment contract. *Id.* There was no issue regarding how the dispute would be resolved. This Court quoted extensively from the employee handbook and concluded that the handbook "did not become an understanding binding on the employer." *Id.* at 260, 335 S.E.2d at 84. However, *Walker* is inapposite here as there is evidence beyond the promulgation of the policy manual that indicates the grievance procedure was made part of plaintiff's employment contract.

MARTIN v. VANCE

[133 N.C. App. 116 (1999)]

In this case, we examine a number of factors to determine if plaintiff's contract of employment included an agreement to arbitrate her claims. First, plaintiff had worked for Duke since 1990 and the Personnel Policy Manual containing the grievance procedure had existed since 1994. Also, in her complaint, plaintiff asserted she had a contract of employment with Duke although she denied in her affidavit the grievance procedure was ever explained to her. However, she does not claim that she was unaware of the grievance procedure, and, in fact, plaintiff availed herself of the grievance procedure and began proceedings prior to the initiation of this action. Further, plaintiff sought a transfer to another department and signed the transfer/upgrade request which contained an explicit certification that any dispute or controversy arising out of or related to her employment or termination by Duke would be subject to resolution through the applicable grievance or dispute resolution procedure.

An employment-at-will contract may be supplemented by additional agreements which are enforceable. *Walker*, 77 N.C. App. at 261, 335 S.E.2d at 84. Before a valid contract can exist, there must be a mutual agreement between the parties as to the terms of the contract. *Normile v. Miller and Segal v. Miller*, 313 N.C. 98, 326 S.E.2d 11 (1985). "If a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 273, 423 S.E.2d 791, 795 (1992). If the language of the contract is "clear and unambiguous," the court must interpret the contract as written. *Robbins v. Trading Post*, 253 N.C. 474, 117 S.E.2d 438 (1960).

The transfer/upgrade request, which plaintiff signed, is a "clear and unambiguous" certification of her willingness to submit disputes arising from her employment with Duke to the grievance procedure. As the language in the agreement is unambiguous, we need not look beyond the writing itself to determine whether there was mutual assent to the agreement. Furthermore, plaintiff's execution of this document charges her with knowledge and assent to the contents of the agreement. *Biesecker v. Biesecker*, 62 N.C. App. 282, 302 S.E.2d 826 (1983).

> In this State it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents . . . he is held to have signed with full knowledge and assent as to what is therein contained.

*Gas House, Inc. v. Southern Bell Telephone Co.*, 289 N.C. 175, 180, 221 S.E.2d 499, 503 (1976) (*quoting Harris v. Bingham*, 246 N.C. 77, 97 S.E.2d 453 (1957) and *Williams v. Williams*, 220 N.C. 806, 18 S.E.2d 364 (1941)), *overruled on other grounds, State ex rel. Utilities Comm. v. Southern Bell*, 307 N.C. 541, 299 S.E.2d 763 (1983).

Moreover, the agreement to arbitrate does not fail for lack of consideration. Mutual binding promises provide adequate consideration to support a contract. *Casualty Co. v. Funderburg*, 264 N.C. 131, 140 S.E.2d 750 (1965); *Kirby v. Board of Education*, 230 N.C. 619, 55 S.E.2d 322 (1949). Where each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement. *See Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998).

Other jurisdictions have held that arbitration agreements evidenced by similar circumstances as here are enforceable. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 114 L. Ed. 2d 26 (1991), the plaintiff was required by his employer to register as a securities representative with several securities exchanges including the New York Stock Exchange. Included in the registration materials was a requirement that the plaintiff agree to arbitrate any disputes that arose between him and his employer and which were required to be arbitrated by the rules of the stock exchange. *Id.* After the plaintiff was terminated by his employer at the age of 62, he sued under the Age Discrimination in Employment Act and the employer moved to compel arbitration. *Id.* The Supreme Court affirmed the Fourth Circuit Court of Appeals and held that the claim was arbitrable under the agreement signed by the plaintiff with the stock exchange. *Id.*

In *O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir. 1997), the plaintiff, while on leave from work, signed an acknowledgment form when she received an employee handbook from the new owners of the defendant hospital. *Id.* at 273. The acknowledgment form contained an agreement to arbitrate all claims arising out of plaintiff's employment. *Id.* The plaintiff argued that the arbitration agreement failed for lack of mutual assent claiming that the hospital had not agreed to be bound. The Fourth Circuit Court of Appeals disagreed and held that by submitting the arbitration policy to plaintiff, the defendant hospital had implicitly agreed to be bound by the policy. *Id.* at 275. Noting the strong federal policy supporting arbitration of

disputes, the trial court reversed and remanded the case for a stay pending arbitration. *Id.* at 276.

Similarly, in *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997), plaintiff was employed at a hospital owned by defendant, and, when she received a copy of Tenet's employee handbook, she signed an arbitration clause set out on the last page of the handbook. *Id.* at 834. The trial court found that the signed arbitration clause constituted a contract and dismissed the plaintiff's complaint. *Id.* On appeal, Patterson argued that Missouri law ordinarily did not consider an employee handbook part of an employment contract because it lacks the usual prerequisites to a contract. *Id.* at 835. However, the Eighth Circuit Court of Appeals found that although the employee handbook was not a contract, the arbitration clause formed a separate contract because it was separate and distinct from the remainder of the handbook. *Id.* Thus, the arbitration agreement was enforceable for all claims that the plaintiff brought against the hospital.

In *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998), the plaintiff applied for a job with defendant and signed her job application which contained an arbitration agreement whereby any claims arising out of her application or her employment with defendant would be submitted to arbitration. The district court held that the agreement was not enforceable for lack of consideration and denied defendant's motion for summary judgment. *Id.* at 377. Pursuant to their earlier decision in *O'Neil*, the Fourth Circuit Court of Appeals reversed the trial court holding that where both parties agree to be bound by the arbitration, there was sufficient consideration to enforce the contract. *Id.* at 379.

In each of the above cases, the court held the plaintiff was bound by an arbitration agreement which was proffered by an employer, prospective employer, or a regulating body and which was not part of a formal employment contract. Here, plaintiff alleged in her complaint that she had an employment contract with Duke during her seven years of employment. The grievance procedure had been included in the Personnel Policy Manual since 1994. With this additional background, it is apparent that plaintiff signed the transfer/upgrade request document knowing that any claim arising out of her employment would be subject to resolution pursuant to the grievance procedure. Moreover, plaintiff took advantage of the grievance procedure by initiating the internal review of her termination and seeking reinstatement. Thus, the grievance procedure as set out

in the Personnel Policy Manual became a part of plaintiff's employment contract.

The plaintiff cites *Routh,* 108 N.C. App. 268, 423 S.E.2d 791, in support of her contention that there was no agreement. In *Routh,* the plaintiff signed an agreement which terminated the business relationship between the parties and which also included an arbitration agreement. *Id.* However, an additional term to the agreement had been placed at the end of the standard form and plaintiff only signed on the line after the added term, not on the original line designated for his signature. *Id.* This Court, in affirming the trial court's holding that the arbitration agreement was invalid, held that there was no meeting of the minds by the parties with regard to the agreement to arbitrate. *Id.* at 274, 423 S.E.2d at 795. We reasoned that an ambiguity existed in the agreement because of the added term and the signature after the added term and that extrinsic evidence was properly admitted to interpret the contract. *Id.* at 273, 423 S.E.2d at 795. The extrinsic evidence indicated that the parties had not agreed on the term requiring arbitration. *Id.* There is no such ambiguity in the agreement signed by the plaintiff and she makes no such contention.

Plaintiff also contends that the agreement was not enforceable because she did not make a voluntary waiver of her rights to judicial process and cites *Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299 (9th Cir. 1994), *cert. denied,* 516 U.S. 812, 133 L. Ed. 2d 24 (1995) as authority. In *Lai,* the Ninth Circuit Court of Appeals held that a plaintiff must make a knowing and voluntary waiver of her right to litigate a claim brought under Title VII for sexual discrimination. *Id. Lai* is distinguishable, however, because it deals specifically with federal statutory claims arising out of the employment. Further, the agreement only required those claims selected by the employer to be arbitrated. In this case, plaintiff's claims are not statutorily based nor were they selected by the employer to be arbitrated. The parties' agreement to abide by the grievance procedure includes all claims arising out of the employment relationship. Moreover, as noted above, plaintiff is charged with knowledge of and assent to the agreement which she signed. *See Biesecker,* 62 N.C. App. 282, 302 S.E.2d 826.

We conclude that plaintiff's employment contract included an agreement to arbitrate plaintiff's claims which she now asserts. For the reasons stated herein, we reverse the order of the trial court denying defendants' motions to dismiss and to stay the proceedings pend-

ing final arbitration and remand for entry of an order staying proceedings pending final arbitration.

Reversed and remanded.

Judges LEWIS and TIMMONS-GOODSON concur.