JOHN L. FONTANA, M.D., Plaintiff v. SOUTHEAST ANESTHESIOLOGY CONSULTANTS, P.A., DR. RICHARD L. GILBERT, DR. MICHAEL T. GILLETTE, DR. JOSHUA S. MILLER, AND DR. RICHARD YEVAK, AMERICAN ANESTHESIOLOGY OF THE SOUTHEAST, PLLC, MEDNAX SERVICES, INC. AND MEDNAX, INC., Defendants

No. COA11-1494

(Filed 17 July 2012)

**1. Appeal and Error—interlocutory orders and appeals— denial of arbitration—substantial right**

Defendant's appeal from the trial court's order denying arbitration in an employment termination case was immediately appealable because it involved a substantial right, the right to arbitrate claims, which might have been lost had appeal been delayed.

**2. Arbitration and Mediation—employment termination—scope of arbitration agreement**

The trial court erred in an employment termination case by denying arbitration for plaintiff's breach of employment contract claim against defendant Southeast Anesthesiology Consultants. Plaintiff's remaining claims against the various defendants did not pertain to his termination, and therefore, did not fall within the scope of the arbitration clause.

**3. Arbitration and Mediation—enforceability—breach of employment contract**

The trial court did not err in an employment termination case by failing to find that an arbitration provision was enforceable by all defendants. The only claim subject to the arbitration provision was the breach of employment contract, which was only between defendant Southeast Anesthesiology Consultants and plaintiff.

**4. Contracts—breach of employment contract—subject to arbitration—stay**

The trial court erred in an employment termination case by failing to stay a breach of employment contract action pending arbitration. The breach of employment contract claim was subject to arbitration while the remaining claims were severable.

Appeal by defendants from order entered 1 June 2011 by Judge Robert T. Sumner in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 April 2012.

*Hamilton Stephens Steele & Martin, PLLC, by Jackson N. Steele and Mark R. Kutny, for plaintiff-appellee.*

*Ogletree Deakins Nash Smoak & Stewart, by H. Bernard Tisdale III, for defendants-appellants.*

HUNTER, Robert C., Judge.

Southeast Anesthesiology Consultants, P.A. ("SAC"), American Anesthesiology of the Southeast, PLLC ("AAS"), Mednax Services, Inc. ("MSI"), Mednax, Inc. ("MDX"), Dr. Richard Gilbert, Dr. Michael Gillette, Dr. Joshua Miller, and Dr. Richard Yevak (collectively "defendants")[1] appeal from the trial court's 1 June 2011 order denying defend-

---

1. The named physicians were shareholders of SAC.

FONTANA v. S.E. ANESTHESIOLOGY CONSULTANTS

[221 N.C. App. 582 (2012)]

ants' motion to stay the litigation and compel arbitration. After careful review, we affirm in part and reverse and remand in part.

## Background

The record tends to establish the following facts: Dr. John Fontana ("plaintiff") received a letter dated 29 August 2006 which detailed an offer of employment from SAC. The letter contained, *inter alia*, the compensation package plaintiff was to receive, a benefits summary, a non-compete clause, and the following statement: "You will be eligible for consideration as a shareholder solely of Southeast Anesthesiology Consultants, PA after six (6) years." Plaintiff claimed in his complaint that he discussed the six-year "partnership track" in detail with Drs. Gilbert, Gillette, and Yevak prior to receiving the 29 August letter. Plaintiff asserted that he was assured that SAC would not be sold before he became a partner. The 29 August letter was signed by plaintiff, Dr. Gillette, and Dr. Gilbert on 17 September 2006. Plaintiff refers to this letter as the "letter agreement." In his complaint, plaintiff also refers to a "partnership agreement" that was entered into in August 2006. However, the partnership agreement was an oral agreement.

Plaintiff subsequently signed an employment contract ("employment contract") with SAC, which stated that plaintiff's employment with SAC would begin on 1 March 2007 and that the contract of employment would automatically renew for successive one-year terms. The employment contract informed plaintiff that his employment could be terminated "at any time for cause" and that the termination would be effective immediately. The employment contract listed eight nonexclusive reasons for which defendant could be terminated for cause. The contract further stated that plaintiff could be terminated without cause upon 90 days written notice.

The employment contract did not contain the language that was present in the 29 August letter indicating that plaintiff would be eligible for consideration as a shareholder after six years of employment; however, the letter stated plaintiff's salary on an increasing scale for six years. By year six, plaintiff was contracted to receive 70% of full partnership compensation. The contract contained a merger clause stating that the contract "constitute[d] the entire agreement between the parties . . . and supersede[d] any and all other agreements, either oral or in writing[.]"

The contract also contained an arbitration provision which stated, in pertinent part:

**FONTANA v. S.E. ANESTHESIOLOGY CONSULTANTS**

[221 N.C. App. 582 (2012)]

> Arbitration. Except as otherwise provided in this Agreement, the parties shall attempt in good faith to resolve any dispute arising out of or relating to the termination of this Agreement promptly by negotiations between representatives of both parties who have authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of the employment relationship.
>
> . . . .
>
> Except as otherwise provided in this Agreement, if the parties are unable to resolve the dispute regarding termination of Employee by negotiations as set forth above, *any and all such disputes regarding termination of Employee,* including any termination dispute concerning any federal or state discrimination, workplace or other law, regulation, or statute, if applicable, shall be settled by binding arbitration, conducted on a confidential basis, under the Rules of Arbitration of the American Arbitration Association by one arbiter appointed in accordance with such rules. *This arbitration shall be solely limited to disputes regarding the termination of employee as described above.* The arbitration shall be held in Charlotte, North Carolina. The parties agree to use reasonable efforts to agree upon an arbiter knowledgeable as to the business of anesthesiology, pain management, physical medicine and rehabilitation, and critical care medicine. (Emphasis added.)

The employment contract was drafted by SAC, and plaintiff was not permitted to make changes to the employment contract. Only the employment contract contained an arbitration clause.

Plaintiff contends that SAC began negotiations in 2008 to sell SAC contrary to assurances made to him that SAC would not be sold before plaintiff achieved partner status. Plaintiff claims that he was not informed in 2008 or 2009 that SAC may be sold and that his ability to achieve partner status was in jeopardy. In 2010, SAC entered into an agreement with MSI and MDX for the sale of 100% of the shares of SAC.[2] The sale was approved by the SAC Board of Directors in August 2010. On 16 September 2010, AAS and MDX sent plaintiff a letter stating that it would be "assuming" plaintiff's employment contract. Plaintiff was asked by AAS to sign a new employment contract under which he would receive a fixed salary, unlike the original con-

---

2. It appears from the record that MSI is a wholly owned subsidiary of MDX. AAS is a wholly owned subsidiary of MSI.

tract which provided for a six-year graduated salary. On 28 September 2010, plaintiff sent a letter to MDX stating:

> Your proposal is basically unfair to a 4th year partnership track physician such as myself and is contrary to the representations by SAC which led me to join the practice in 2007 and to remain there for the last three and a half years. As a result, I will not be signing anything that changes my and SAC's obligations to each other.

By an undated letter mailed on 6 October 2010, SAC informed plaintiff that his employment with SAC was terminated effective 1 October 2010. The letter did not state the reason for termination. Plaintiff contends that he did not receive 90 days notice and that his "termination was not discussed or approved by SAC's Executive Committee and was never approved by SAC's Board of Directors as was required by Article V, Section I of SAC's Bylaws."

On 19 January 2011, plaintiff filed a complaint alleging the following causes of action: (1) fraudulent inducement against SAC, Dr. Gilbert, Dr. Gillette, Dr. Miller, and Dr. Yevak; (2) actual fraud against SAC, Dr. Gilbert, Dr. Gillette, Dr. Miller, and Dr. Yevak; (3) constructive fraud against SAC, Dr. Gilbert, Dr. Gillette, Dr. Miller, and Dr. Yevak; (4) punitive damages against SAC, Dr. Gilbert, Dr. Gillette, Dr. Miller, and Dr. Yevak; (5) negligent misrepresentation against SAC, Dr. Gilbert, Dr. Gillette, Dr. Miller, and Dr. Yevak; (6) breach of partnership agreement against SAC; (7) breach of letter agreement against SAC; (8) breach of employment agreement against SAC; (9) civil conspiracy against all defendants; (10) tortious interference against AAS, MSI, and MDX; (11) defamation against SAC, AAS, Dr. Gilbert, and Dr. Yevak; (12) unfair and deceptive acts or practices against all defendants; and (13) declaratory judgment against SAC and AAS.

Defendants subsequently filed a motion to dismiss plaintiff's complaint, a motion to strike allegations contained in plaintiff's complaint, and a motion to stay the litigation and to compel arbitration ("motion to compel arbitration"). A hearing was held on the motions on 9 May 2011. In an order filed 1 June 2011, the trial court denied all of defendants' motions. The trial concluded as a matter of law:

> 3. . . . [T]he specific controversy set forth in the Complaint is not the subject of the limited agreement to arbitrate in the Employment Agreement. The arbitration clause in the Employment Agreement, by its terms, is limited to only disputes involv-

ing the termination of Dr. Fontana's employment with SAC based on his fitness to practice medicine.

. . . .

7. The Court also concludes that one who is not a party to an arbitration agreement lacks standing to compel arbitration. In so doing, the Court notes that non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under theories arising out of common law principles of agency. Under the theory of agency, an agent can assume the protection of the contract which the principal has signed. Courts have applied this principle to allow for non-signatory agents to avail themselves of the protection of their principal's arbitration agreement. Thus, even if the language of the arbitration agreement applied to the claims in the Complaint, only SAC and its agents have standing to enforce the arbitration agreement. MSI and MDX are not the agents of SAC.

8. The claims set forth in the Complaint are not subject to arbitration given the limited language of the arbitration agreement in the Employment Agreement.

Thus, the trial court stated two bases for denying defendants' motion to arbitrate: (1) plaintiff's claims were not subject to arbitration, and (2) the arbitration provision of the employment contract was not enforceable by MSI and MDX. Defendants gave timely notice of appeal from this order.

## Discussion

### I. Interlocutory Nature of Appeal

[1] Defendants' appeal is interlocutory. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). A party may properly appeal an interlocutory order under two circumstances:

First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. § 1A-1, Rule 54(b) [2011]. Second, a party may appeal an interlocutory order that "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment."

*Dep't of Transp. v. Rowe*, 351 N.C. 172, 174–75, 521 S.E.2d 707, 709 (1999) (quoting *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381). This Court has held that "an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed." *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999). Consequently, we review defendants' appeal.

## II. Motion to Compel Arbitration

**[2]** Defendants claim that a right to arbitrate exists as to all claims against all defendants pursuant to the Federal Arbitration Act and the North Carolina Revised Uniform Arbitration Act. We hold that the only claim subject to arbitration is plaintiff's claim for breach of the employment contract against SAC to the extent this claim pertains to plaintiff's termination.[3]

"The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court." *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001). This Court has held that determining whether a dispute is subject to an arbitration agreement involves "a two-part inquiry: (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Hobbs Staffing Servs., Inc. v. Lumbermens Mut. Cas. Co.*, 168 N.C. App. 223, 225, 606 S.E.2d 708, 710 (2005) (internal quotation marks omitted). "Strong public policy favoring settlement of disputes by arbitration requires us to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Servomation Corp. v. Hickory Const. Co.*, 316 N.C. 543, 546, 342 S.E.2d 853, 855 (1986). However, "[p]ursuant to well settled contract law principles, the language of the arbitration clause should be strictly construed against the drafter of the clause." *Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc.*, 201 N.C. App. 720, 725, 688 S.E.2d 47, 51, *disc. review denied*, 364 N.C. 239, 698 S.E.2d 397 (2010). When the language of the arbitration clause is "clear and unambiguous," we may apply the plain meaning rule to interpret its

---

3. Plaintiff claims for the first time on appeal that defendants have waived their right to arbitrate. However, our Supreme Court has held that the extent to which a party has waived the right to arbitration is a question of fact which must be decided on the basis of the trial court's findings of fact. *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229-30, 321 S.E.2d 872, 876-77 (1984). Here, since plaintiff did not argue that defendants waived the right to arbitrate before the trial court, we decline to address this issue and allow the parties to litigate the waiver issue on remand.

scope. *See generally Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 459, 531 S.E.2d 874, 878, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 129 (2000) (applying the plain meaning rule to interpret the scope of an arbitration clause based on the clear and unambiguous language).

With regards to the first inquiry, there is no dispute in this case that a limited arbitration clause existed in the employment agreement. Contrary to the trial court's findings and conclusions, however, the clause was not "limited to only disputes involving the termination of Dr. Fontana's employment with SAC based on his fitness to practice medicine." The language of the arbitration clause is clear and unambiguous. Thus, in applying the plain meaning rule to determine the scope of the arbitration clause, we find that it includes any dispute regarding plaintiff's termination, not just disputes that relate to his fitness to practice medicine. The types of disputes specifically mentioned in the arbitration clause include ones that are not related to plaintiff's fitness to practice medicine. Furthermore, Section 14 of the employment contract, labeled "Termination," provided that plaintiff could be terminated for cause or without cause and addressed circumstances not related to termination based on plaintiff's fitness to practice medicine. If plaintiff was terminated with cause, his termination was effective immediately. If he was terminated without cause, he was entitled to a 90-day notice. Consequently, we hold that the arbitration clause pertained to any conflicts surrounding the termination of plaintiff's employment.

Next, we must determine whether plaintiff's separate claims against defendants fall within the scope of the arbitration clause. "To determine if a particular dispute is subject to arbitration, this Court must examine the language of the agreement, including the arbitration clause in particular, and determine if the dispute falls within its scope." *In re W.W. Jarvis & Sons*, 194 N.C. App. 799, 803, 671 S.E.2d 534, 536 (2009). Our Court has held that this determination must examine "whether the claim or dispute between the parties falls within the realm of, or has a significant or strong relationship with, the agreed upon arbitration clause." *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 479, 583 S.E.2d 325, 330-31 (2003), *aff'd per curiam*, 358 N.C. 146, 593 S.E.2d 583 (2004).

Plaintiff's claim against SAC for breach of the employment agreement is subject to arbitration to the extent the claim pertains to his termination. Plaintiff claims that he was not given 90 days notice and that SAC did not comply with its bylaws when it terminated his

employment. The issues of whether plaintiff was terminated with or without cause and whether SAC followed proper procedures, as set forth in the employment contract, constitute controversies involving plaintiff's termination and are soundly within the scope of the arbitration clause. Therefore, the trial court erred in holding that this claim is not subject to arbitration.

Plaintiff's remaining claims against the various defendants do not pertain to his termination, and, therefore, do not fall within the scope of the arbitration clause. In his complaint, plaintiff alleges defendants' false representations or concealments of material facts constituted fraudulent inducement, actual fraud, constructive fraud, negligent misrepresentations, and unfair trade practices and give rise to a claim for punitive damages. Specifically, these claims relate to SAC's alleged assurances that plaintiff would become a partner in six years and that SAC would not be sold before that time. While our Court has held that tort claims may be subject to arbitration, there must be a relationship between the claims and the subject matter of the arbitration clause. *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 25, 331 S.E.2d 726, 732 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986). All the circumstances surrounding these claims relate to why plaintiff entered into the contracts and why he continued to work for SAC, not to his termination. Therefore, these disputes do not concern plaintiff's termination.

While the alleged conduct of defendants that serves as the basis for these claims may have contributed to plaintiff's decision to refrain from signing the new employment contract with AAS, which ultimately led to his termination, they do not have a strong relationship with the arbitration provision. In other words, the facts underlying plaintiff's allegations relating to the tort claims may have contributed to creating the environment which led to plaintiff's termination, but they do not specifically pertain to a dispute concerning plaintiff's termination. Therefore, these claims are outside the scope of the arbitration clause, and the trial court did not err in denying defendants' motion to compel arbitration as it pertains to these claims.

Defendants assert that plaintiff's claims were based on his allegations that defendants "took actions contrary to the representations" they made to plaintiff prior to the signing of the employment agreement. Therefore, these actions resulted in plaintiff's termination. While we agree that the circumstances surrounding plaintiff's decision to not sign the new employment contract with AAS are interwoven with the alleged conduct of defendants that gave rise to plain-

tiff's claims, this is not sufficient enough to establish a significant or strong relationship with the arbitration provision.

With regards to plaintiff's claims for breach of the partnership and letter agreements, the partnership agreement was an oral agreement whereby SAC purportedly agreed to make plaintiff a partner in six years. We find that this dispute does not concern plaintiff's termination. Although plaintiff claims that defendants' failure to comply with the representations made to him in the partnership agreement was a factor in his decision to not sign the new employment contract, this claim does not constitute a dispute regarding plaintiff's termination and does not fall within the scope of the arbitration agreement.

Similarly, in regards to the letter agreement, while we note that it does contain a provision in it that plaintiff "will be eligible for consideration as a shareholder solely of [SAC] after six (6) years[,]" this provision does not specifically relate to whether SAC terminated him with or without cause or whether SAC followed proper termination procedures as stated in the employment contract. Therefore, plaintiff's claim for breach of the letter agreement is not within the scope of the arbitration clause.

Finally, plaintiff's claims of civil conspiracy, defamation, and tortious interference with a contract do not concern plaintiff's termination. In his complaint, plaintiff alleges that defendants committed civil conspiracy by failing to disclose information regarding the sale of SAC. Presumably, as with other claims, although the eventual disclosure of the facts surrounding the sale of SAC did have an impact on plaintiff's decision to not sign the new employment contract with AAS, the alleged acts of defendants are not disputes regarding plaintiff's termination.

Furthermore, with regards to plaintiff's claim that defendants AAS, MSI, and MDX committed tortious interference with his SAC contract, the alleged acts that serve as a basis for the claim occurred prior to plaintiff's termination. Therefore they are not subject to the arbitration clause. Similarly, with regards to the defamation claim, the acts plaintiff alleges in support of this claim occurred after he was terminated. Specifically, plaintiff points to statements made to nurse anesthetists and other medical care providers regarding plaintiff's termination. Thus, plaintiff's defamation claim is not subject to the arbitration provision since it arose after he was terminated.

Finally, plaintiff requests that the restrictive covenant in his employment contract be found unenforceable. Although the restric-

tive covenant only became effective because plaintiff was terminated, it is not part of any dispute surrounding his termination. Therefore, it is outside the scope of the arbitration clause.

Accordingly, the trial court's order should be affirmed in part and reversed and remanded in part. Plaintiff's claim for breach of the employment contract by SAC is subject to arbitration as it relates to plaintiff's termination.

[3] Next, defendants allege that the trial court erred in failing to find that the arbitration provision is enforceable by all defendants. Since we have held that the only claim subject to the arbitration provision is the breach of employment contract, which was only between SAC and plaintiff, we will not address this argument on appeal.

[4] Finally, defendants argue that the trial court erred in failing to stay this action pending arbitration. We agree with regards to plaintiff's claim for breach of the employment contract.

Pursuant to N.C. Gen. Stat. § 1-569.7(g) (2011), if a court orders arbitration, "the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." Here, since we have held the breach of the employment contract is subject to arbitration, the trial court must stay the proceedings with regard to that claim. Furthermore, since we found that plaintiff's remaining claims, thus, not subject to arbitration, we hold that those remaining claims are severable, and the trial court is not required to stay the proceedings with regard to those claims.

## Conclusion

Based on our finding that the arbitration provision pertains to disputes concerning plaintiff's termination, we hold that plaintiff's claim for breach of the employment contract is subject to arbitration. Therefore, the trial court erred by denying defendants' motion to compel arbitration with regard to that claim.

Affirmed in part; reversed and remanded in part.

Judges STROUD and ERVIN concur.