IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-81

Filed 5 November 2025

Mecklenburg County, No. 23CVS002515-590

PREMIER ATHLETE ADVISORS LLC, Plaintiff,

v.

ENTERSPORTS MGT LLC, Defendant.

Appeal by Defendant from order entered 20 August 2024 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 August 2025.

*Morrow, Porter, Vermitsky and Taylor, PLLC, by John C. Vermitsky, for Plaintiff-Appellee.*

*Rosenwood, Rose & Litwak, PLLC, by Ross J. Bromberger, for Defendant-Appellant.*

COLLINS, Judge.

This appeal arises out of an "Alliance Agreement" between Plaintiff, Premier Athlete Advisors LLC, and Defendant, EnterSports MGT LLC, to combine their sports management businesses to create a comprehensive football sports agency. EnterSports appeals from the trial court's order concluding that the parties' Agreement contains a valid arbitration clause requiring private arbitration and that the National Football League Players Association ("NFLPA") does not have jurisdiction to arbitrate the underlying dispute. For the following reasons, we affirm.

## I.     Background

### A. Alliance Agreement

Premier is a North Carolina limited liability corporation co-owned by Adam Seifer, who is an NFLPA-certified Contract Advisor,[1] and Matthew Flatow, who is not an NFLPA-certified Contract Advisor.  EnterSports is a Georgia limited liability corporation; Hadley Engelhard, an NFLPA-certified Contract Advisor, is the president and CEO, and he employs Jim Ulrich and Chad Berger, who are also NFLPA-certified Contract Advisors.  In May 2019, Premier and EnterSports entered into an "Alliance Agreement" to "combine their sports management businesses solely as it relates to the football industry to offer a comprehensive football sports agency to recruit and represent athletes currently playing or desiring to play in the National Football League ('NFL'). . . ."  Under the Agreement, Premier and EnterSports together form "the Alliance."  Engelhard is the President and CEO of the Alliance, Ulrich the Legal Counsel, Seifer the Senior Vice President of Football, and Mathew Flatow the General Counsel.

The terms of the Agreement provided the following:

The Alliance will advise athletes in negotiating contracts with NFL teams and marketing agreements with third parties.  The Alliance will "pursue the representation of identified [p]layers through cooperative agreements."  Upon the

---

[1] NFLPA-certified agents are referred to as "Contract Advisors" in the NFLPA Regulations Governing Contract Advisors.

Alliance entering into an agreement to represent a player, the player and "Engelhard, Ulrich[,] and Seifer, collectively as 'Contract Advisors'" shall enter into an NFLPA Standard Representation Agreement as well as a "marketing agreement." If the player enters into a contract with an NFL team, "Engelhard, Ulrich[,] and Seifer, collectively, shall be named as such [p]layer's Certified Agent."

Premier and EnterSports will each "bear a fifty percent (50%) share of all costs and expenses incurred," and will each earn "a fifty percent (50%) share of any and all proceeds, revenues, endorsement monies, fees, and commissions earned by [the] [p]layer during the course of the representation of [the] [p]layer."

Section 6 of the Agreement governs dispute resolution and provides that Premier and EnterSports "shall resolve any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity hereof (each, a 'Dispute')", under the provisions of Section 6. (emphasis omitted). Section 6.2 provides for mediation and requires the parties to "use commercially reasonable efforts to resolve the Dispute in the mediation." Section 6.3 is titled "Arbitration as a Final Resort" and provides:

> (a) If the Parties cannot resolve any Dispute for any reason, including, but not limited to, the failure of either Party to agree to enter into mediation or agree to any settlement proposed by the mediator, within ninety (90) days after the Mediation Date, either Party may initiate final and binding arbitration by delivering a notice of arbitration to the other Party setting out the nature of the claim(s) and the relief requested. . . .

(b) The arbitral tribunal shall have the sole power to rule on any challenge to its own jurisdiction and all issues regarding arbitrability shall be decided by the arbitral tribunal. The place of arbitration shall be in either Atlanta, Georgia or Charlotte, North Carolina. The bringer of the Dispute may pick the forum.

(c) The tribunal shall consist of one mutually agreed upon arbitrator.

(d) Judgment may be entered upon the award by any court having jurisdiction.

Section 10 of the Agreement governs waiver and provides that no provision of the Agreement can be waived unless done explicitly in a writing signed by the parties:

> No waiver by either Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by either Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

## B. Termination of the Alliance Agreement

In August 2022, Premier sent a letter to EnterSports providing its Notice of Termination of the Agreement. Premier stated that during the three years of the Agreement, Premier had "successfully represented and/or brought to the Alliance the following players: Ron'Dell Carter[,] Shemar Jean-Charles[,] [and] Tre Herndon";

Premier requested an accounting of revenues and expenses for those players for the previous three years. Premier detailed costs and profits related to the representation of those three players and also asked for reimbursement for an additional expense related to Maxim Super Bowl party tickets. Based on Premier's calculations, EnterSports owed Premier $37,748.19.

A few days later, Seifer brought a grievance against Engelhard in the NFLPA, pursuant to the NFLPA Regulations Governing Contract Advisors. Seifer indicated on the NFLPA Section 5 Grievance Notification Form that the grievance was a "[d]ispute between two (2) Contract Advisors." Attached to the grievance was the Agreement, Premier's Notice of Termination of the Agreement, and an email to the NFLPA Legal Department explaining the nature of the grievance. The email reiterated the information stated in the Notice of Termination of the Agreement: it quoted the Agreement's provisions requiring costs and profits related to player representation to be split equally between Premier and EnterSports; detailed costs and profits related to the representation of Ron'Dell Carter, Shemar Jean-Charles, and Tre Herndon; and noted an unreimbursed expense for a Maxim Super Bowl party ticket.

At a hearing before an NFLPA arbitrator in December 2022, Seifer and Engelhard reached a settlement. Seifer never signed the settlement, however. In May 2023, an NFLPA arbitrator ordered Seifer and Engelhard to sign the settlement reached during the December hearing. The record does not contain evidence that the

settlement has been signed.

In July 2023, Engelhard brought a grievance in the NFLPA against Seifer, alleging that Seifer had failed to pay fees due under the settlement. Engelhard indicated on the NFLPA Section 5 Grievance Notification Form that the grievance was a "[d]ispute between two (2) Contract Advisors[.]" A hearing before an NFLPA arbitrator was scheduled for 22 February 2024.

Meanwhile, on 7 February 2023, Premier filed a demand for arbitration and a complaint against EnterSports in Mecklenburg County superior court. In its demand for arbitration, Premier asserted,

> 1. [Premier] and [EnterSports] made numerous attempts to resolve this matter over many months, without success and therefore mediation would be inefficacious. Therefore Section 6.2 of the [] Agreement dated May 9, 2019 . . . is satisfied.
>
> 2. Pursuant to Section 6.3 of the [] Agreement, this Complaint serves as notice of initiation of final and binding arbitration, the nature of [Premier]'s claims and relief requested.
>
> 3. As the bringer of the dispute under Section 6.3(b), [Premier] elects that the arbitration take place in Mecklenburg County, North Carolina.

Premier brought claims against EnterSports for breach of contract and unjust enrichment, alleging that, among other things, EnterSports failed to follow the terms of the Agreement when it signed contracts to represent approximately seventeen

players.[2]

EnterSports did not answer, and Premier moved for entry of default. Premier's motion was allowed, and an order for entry of default was entered. Premier then moved for default judgment. In June 2023, default judgment was entered against EnterSports for $158,948.74 plus $5,000.[3] A writ of execution was issued in October 2023 for $160,948.74 plus interest. EnterSports filed a motion to quash the writ and vacate the default judgment, asserting that it had "not been served with a copy of the Complaint, Summons, Motion for Entry of Default or any other pleadings in this matter."[4] After a hearing, the trial court allowed EnterSports' motion and the judgment was vacated. An alias and pluries summons was issued, and EnterSports accepted service of the summons and complaint on 9 May 2024.

Premier and EnterSports filed a joint motion in June 2024 to stay the proceedings and for a declaratory judgment declaring the proper venue and applicable rules of arbitration for their agreed-upon arbitration. Premier alleged that the proper venue is a private arbitrator in Charlotte, North Carolina; EnterSports alleged that the proper venue and arbitration rules are in the NFLPA. After a

---

[2] These players included: Kalif Raymond, Michael Hoecht, Drue Chrisman, Christian Benford, Velus Jones, Doug Costin, Kendall Coleman, Michael Barnett, Damon Hayes, Lamont McPhatter, Josh Pederson, Jequez Ezzard, Aaron Hackett, John Haggerty, John Lovett, Forrest Rhyne, and Parker White.

[3] The record on appeal is missing the page of the Order for Default Judgment that details what the $5,000 is for.

[4] The complaint, summons, and various pleadings had been sent by Premier and its attorney to EnterSports at "6000 Lake Forest Drive" and "6000 Lake Forrest Drive"; EnterSports' correct address is "600 Lake Forest Drive."

hearing, the trial court entered an order on 20 August 2024 concluding that the Agreement's arbitration clause requiring private arbitration is valid and enforceable, and the NFLPA has no jurisdiction to arbitrate the underlying dispute.

EnterSports appeals.

## II.    Appellate Jurisdiction

EnterSports appeals from an interlocutory order.  "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."  *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 76 (2011) (citation omitted).  There is generally "no right to appeal from an interlocutory order." *Darroch v. Lea*, 150 N.C. App. 156, 158 (2002) (citation omitted).  This Court therefore must dismiss an appeal from an interlocutory order for lack of subject matter jurisdiction, "unless the appellant is able to carry its burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature."  *C. Terry Hunt Indus., Inc. v. Klausner Lumber Two, LLC*, 255 N.C. App. 8, 11 (2017) (quotation marks and citation omitted).

"[A] party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits."  *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379 (1994) (quotation marks and citations omitted).  "A substantial right is one which will clearly be lost or irremediably adversely affected

if the order is not reviewable before final judgment." *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 142 (2000) (quotation marks and citation omitted).

It is well settled that "an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime S. Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258 (1991) (citations omitted). "Likewise, orders addressing the validity of a forum-selection clause also affect a substantial right." *Earnhardt Plumbing, LLC v. Thomas Builders, Inc.*, 291 N.C. App. 1, 4 (2023) (citation omitted).

Here, EnterSports argues that the trial court's order affects a substantial right because it deprives it of its right to arbitrate the underlying dispute in its alleged proper venue—the NFLPA. We agree with EnterSports that the trial court's order involves a substantial right that "might be lost, prejudiced, or inadequately preserved in the absence of an immediate appeal." *Clements v. Clements*, 219 N.C. App. 581, 584 (2012) (quotation marks and citation omitted); *see Prime S. Homes, Inc.*, 102 N.C. App. at 258. Accordingly, this Court has jurisdiction to review the merits of EnterSports' appeal.

### III. Discussion

EnterSports argues that the trial court erred by determining that the Agreement's arbitration clause is valid and enforceable and that the NFLPA has no jurisdiction to arbitrate the underlying dispute. We address each argument in turn.

**A. Standards of Review**

"[W]hether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by [this C]ourt." *Epic Games, Inc. v. Murphy-Johnson*, 247 N.C. App. 54, 61 (2016) (citation omitted). Similarly, "[i]ssues relating to the interpretation of terms in an arbitration clause are matters of law, which this Court reviews *de novo*." *Earnhardt Plumbing*, 291 N.C. App. at 4 (citation omitted). "Under a *de novo* review, the [appellate] court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Cnty. of Moore v. Acres*, 284 N.C. App. 250, 255 (2022) (citation omitted).

**B. Arbitration Clause in the Agreement**

When parties have entered into an agreement, "[t]o determine if a particular dispute is subject to arbitration, this Court must examine the language of the agreement, including the arbitration clause in particular, and determine if the dispute falls within its scope." *Fontana v. S.E. Anesthesiology Consultants*, 221 N.C. App. 582, 589 (2012) (citation omitted). This determination involves a two-step inquiry: "(1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Id.* at 588 (quotation marks and citation omitted).

"Because the duty to arbitrate is contractual, only those disputes which the parties agreed to submit to arbitration may be so resolved." *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 23 (1985) (citation omitted). "Strong public policy favoring settlement of disputes by arbitration requires us to resolve any doubts concerning the

scope of arbitrable issues in favor of arbitration." *Servomation Corp. v. Hickory Const. Co.*, 316 N.C. 543, 546 (1986). Moreover, "[w]hen the language of the arbitration clause is clear and unambiguous, we may apply the plain meaning rule to interpret its scope." *Fontana*, 221 N.C. App. at 588-89 (quotation marks and citation omitted).

Here, the parties do not dispute that the Agreement contains an arbitration clause requiring the dispute between them to be arbitrated. Section 6 governs Dispute Resolution and provides for Arbitration as a Final Resort:

> 6. Dispute Resolution.
>
> 6.1   Exclusive Dispute Resolution Mechanism.
> The parties shall resolve any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity hereof (each, a "Dispute"), under the provisions of this Section. The procedures set forth in Sections 6.2 and 6.3 shall be the exclusive mechanism for resolving any Disputes between the Parties.
>
> 6.2   Mediation.
>
> . . . .
>
> 6.3   Arbitration as a Final Resort.
>
> (a)   If the Parties cannot resolve any Dispute for any reason, including, but not limited to, the failure of either Party to agree to enter into mediation or agree to any settlement proposed by the mediator, within ninety (90) days after the Mediation Date, either Party may initiate final and binding arbitration by delivering a notice of arbitration to the other Party setting out the nature of the claim(s) and the relief requested. . . .

> (b)    The arbitral tribunal shall have the sole power to rule on any challenge to its own jurisdiction and all issues regarding arbitrability shall be decided solely by the arbitral tribunal. The place of arbitration shall be in either Atlanta, Georgia or Charlotte, North Carolina. The bringer of the Dispute may pick the forum.

(emphasis omitted).

The scope of the arbitration clause in the Agreement is broad and unambiguous; it encompasses "any Dispute for any reason" between Premier and EnterSports and defines a "Dispute" as "any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity hereof[.]" The underlying dispute is a contract dispute; Premier and EnterSports engaged in a shared business venture pursuant to a written agreement. Premier terminated the Agreement and sued EnterSports for breach of contract and unjust enrichment for EnterSports' alleged failure to abide by the terms of the Agreement. The Agreement further provides that arbitration shall occur in either Atlanta, Georgia or Charlotte, North Carolina, with the location to be chosen by "[t]he bringer of the Dispute." As the party who filed the complaint, Premier selected Charlotte, North Carolina as the location for arbitration.

Therefore, the parties in this case "had a valid agreement to arbitrate," and the underlying dispute "falls within the substantive scope of that agreement." *Fontana*, 221 N.C. App. at 588 (quotation marks and citation omitted). Because the Agreement's terms are clear and unambiguous, the trial court did not err by

concluding that the Agreement's arbitration clause is valid and enforceable, that the arbitration clause covers the underlying dispute, and that Charlotte, North Carolina is the proper arbitration venue.

## C. Applicability of NFLPA Regulations Governing Contract Advisors

EnterSports argues that, regardless of the validity and applicability of the Agreement's arbitration clause, the NFLPA has jurisdiction over the parties' dispute. Specifically, EnterSports argues that "[t]he NFLPA Regulations are clear that they govern NFLPA-certified agents/contract advisors with respect to the handling of intra-agent disputes over sharing fees." While this may be true, it does not support EnterSports' position that the NFLPA has jurisdiction over the particular dispute before us.

The Officers and Player Representatives of the NFLPA adopted the NFLPA Regulations Governing Contract Advisors in 2011 "for persons who desired to provide representation services to players (including rookies) by conducting individual contract negotiations and/or assisting in or advising with respect to such negotiations with the member Clubs of the National Football League ('NFL')." NFLPA Regulations Governing Contract Advisors, *Introduction* (August 2016). The NFLPA Regulations provide, "Persons serving or wishing to serve as the NFLPA's 'agent' pursuant to these provisions of the [Collective Bargaining Agreement], which persons are herein referred to as 'Contract Advisors,' shall be governed by these Regulations." *Id*.

To be eligible for certification as an NFLPA Contract Advisor, a person must file an application, file a release for a personal credit report, and pay an application fee. *Id*. § 2.A (August 2016). "Certification will be granted hereunder only to individuals and not any firm, corporation, partnership or other business entity." *Id.* The NFLPA Regulations' definition of a "Contract Advisor" does not incorporate the agent's employer or business entity.[5] *Id.* Instead, the NFLPA Regulations specifically state that agent "[c]ertification will be granted hereunder only to individuals and not any firm, corporation, partnership or other business entity." *Id.*

The underlying dispute in this case is for "a full accounting for division of fees and expenses during a shared business venture" between Premier and EnterSports, two limited liability corporations. Furthermore, Premier is co-owned by Flatow, who is not an NFLPA-certified Contract Advisor. As the NFLPA Regulations govern Contract Advisors, and Premier, EnterSports, and Flatow do not fall within the definition of "Contract Advisors," the NFLPA Regulations do not govern the arbitration venue for the underlying dispute concerning fees and expenses between Premier and EnterSports. *See id.*

---

[5] The MLBPA Regulations Governing Player Agents, for example, provides, "The MLBPA will certify only individuals as Player Agents or Expert Agent Advisors and not firms or business entities, such as corporations, companies, partnerships, etc." MLBPA Regulations Governing Player Agents, § 2(C) (February 2016). The MLBPA Regulations, however, expressly state that "where one or more Player Agents own or conduct business as, or are employed by, a business entity, the term 'Player Agent' includes the firm or business entity they own or with which they are employed or associated, unless the context clearly provides otherwise." *Id.* The NFLPA Regulations include no such language.

EnterSports argues that Premier, through Seifer's prior grievance under the NFLPA, "waived its right to rely on the arbitration clause" in the Agreement. This argument is without merit.

Here, the Agreement included a waiver provision that expressly provided, "No waiver by either Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving." The provision further provided, "No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof[.]" There is no evidence in the record that Premier and EnterSports agreed, in writing, to waive any of the Agreement's provisions concerning the arbitration of disputes. Furthermore, the Agreement's waiver clause discredits EnterSports' argument that Premier impliedly waived its right to resolve this dispute via private arbitration. *See Fairview Developers, Inc. v. Miller*, 187 N.C. App. 168, 173 (2007) ("Waiver by implication is not looked upon with favor by the [C]ourt.") (citation omitted).

Unlike the grievances filed by Siefer and Engelhard in the NFLPA that were presented as "[d]ispute[s] between two (2) Contract Advisors," the underlying dispute in this case is between two limited liability corporations. As the NFLPA Regulations govern Siefer and Engelhard in their capacities as Contract Advisors but do not govern Premier and EnterSports as limited liability corporations, or Flatow as Premier's co-owner, Premier did not waive its right to rely on the arbitration clause

of the Agreement by Seifer's prior grievance under the NFLPA.

For the reasons above, the trial court did not err by concluding that the NFLPA is without jurisdiction to arbitrate the underlying dispute.

**D. EnterSports' Reply Brief Motions**

In its Reply Brief, EnterSports urges this Court to "disregard" the transcript filed by Premier with this Court, citing Premier's "failure to follow procedure." EnterSports' request is a motion to strike, which has not been properly raised in accordance with North Carolina Appellate Procedure Rule 37.

"An application to a court of the appellate division for an order or for other relief available under these rules may be made by filing a motion for such order or other relief with the clerk of the court, with service on all other parties." N.C. R. App. P. 37(a). "Motions to an appellate court may not be made in a brief but must be made in accordance with N.C. R. App. P. 37." *Horton v. New S. Ins. Co.*, 122 N.C. App. 265, 268 (1996) (citation omitted).

Here, EnterSports failed to file a motion to strike in accordance with Rule 37 and instead brought this motion for the first time in its Reply Brief. Because EnterSports failed to abide by the requirements of Rule 37, we dismiss its motion.

In its Reply Brief, EnterSports also asks this Court to "disregard" Premier's factual assertions that lack record cites or record support.

EnterSports' request is a motion to strike, which has not been properly raised in accordance with Rule 37. Furthermore, our review is based solely on the record

evidence and not on the parties' representations of the facts in their briefs.  To the extent any factual allegations are not supported by the record evidence, they have not been considered.  Accordingly, we dismiss this motion.

## IV.    Conclusion

For the foregoing reasons, we affirm the trial court's order concluding that the Agreement's arbitration clause is valid and enforceable and that the NFLPA has no jurisdiction to arbitrate the underlying dispute.

AFFIRMED.

Judges ARROWOOD and FREEMAN concur.